IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

THE CATHOLIC DIOCESE          )
OF NASHVILLE, et al.          )
                              ) NO. 3-12-0934
v.                            ) JUDGE CAMPBELL
                              )
KATHLEEN SEBELIUS, et al.     )

MEMORANDUM

Pending before the Court is Defendants' Motion to Dismiss (Docket No. 28). For the reasons stated herein, Defendants' Motion is GRANTED, and this action is DISMISSED.

FACTS

Plaintiffs' Complaint (Docket No. 1) asserts that Plaintiffs are Catholic religious entities that provide a wide range of spiritual, educational and social services to individuals in Middle Tennessee and beyond, regardless of whether those individuals are Catholic. Plaintiffs allege that they uphold and follow the teachings of the Catholic Church. Plaintiffs contend that their genuinely-held religious beliefs dictate that it is unacceptable to support, pay for, provide and/or facilitate abortion, sterilization or the use of contraception.

Plaintiffs The Catholic Diocese of Nashville and Catholic Charities are religious associations organized exclusively for religious, charitable and educational purposes. Plaintiffs Father Ryan High School, Pope John Paul II High School and Aquinas College are educational organizations and non-profit corporations organized exclusively for religious, charitable and educational purposes. Plaintiffs Mary, Queen of Angels, Inc., Villa Maria Manor, Inc. and St. Mary Villa, Inc. (collectively, "the Mary Entities") are non-profit corporations organized exclusively for religious, charitable and educational purposes. Defendants are officials and executive agencies of the United States.

Plaintiffs claim that, pursuant to the Patient Protection and Affordable Care Act ("ACA"), Defendants have promulgated various rules related to preventive care ("the Rules") that force Plaintiffs to provide or facilitate the provision of abortion-inducing drugs, sterilization, contraceptives and contraceptive services to their employees, in violation of the teachings of the Catholic Church and Plaintiffs' genuinely-held religious beliefs.

Plaintiffs claim that "grandfathered" health plans are exempt from the preventive care requirements of the ACA, but such plans cannot undergo substantial change after March 23, 2010, without losing their grandfathered status. Plaintiffs also assert that violations of the ACA and its regulations can subject an employer and an insurer to substantial monetary penalties.

Plaintiffs aver that Defendants have crafted a narrow, discretionary exemption to the Rules which exempts "religious employers." Group health plans are eligible for this exemption if they are established or maintained by religious employers who satisfy four criteria: (1) the inculcation of religious values is the purpose of the organization; (2) the organization primarily employs persons who share the religious tenets of the organization; (3) the organization primarily serves persons who share the religious tenets of the organization; and (4) the organization is a nonprofit organization as described in the Internal Revenue Code. 45 C.F.R. § 147.130(a)(iv)(B).

Plaintiffs allege that Defendants ignored all other religiously-affiliated employers, such as Plaintiffs, by excluding from the exemption those religious organizations which view their missions as providing charitable, educational and employment opportunities to all those who request it, regardless of their religious faith. Plaintiffs' religious missions implicate important First Amendment concerns.

The parties agree that, in early 2012, Defendants announced a one-year "Safe Harbor" from enforcement of the Rules. "With respect to certain non-exempted, non-profit organizations with religious objections to covering contraceptive services, whose group health plans are not grandfathered health plans, guidance is being issued contemporaneously with these final regulations that provides a one-year safe harbor from enforcement by the Departments." 77 Fed. Reg. 8725-01 (Feb.15, 2012).

The "Guidance on the Temporary Enforcement Safe Harbor for Certain Employers, Group Health Plans and Group Health Insurance Issuers" established this temporary enforcement safe harbor for group health plans sponsored by non-profit organizations that, on and after February 10, 2012, do not provide some or all of the contraceptive coverage otherwise required because of the religious beliefs of the organization. 77 Fed. Reg. 16501 (March 21, 2012). In addition, Defendants stated: "Before the end of the temporary enforcement safe harbor, the Departments will work with stakeholders to develop alternative ways of providing contraceptive coverage without cost sharing with respect to non-exempted, non-profit religious organizations with religious objections to such coverage." 77 Fed. Reg. 8725-01 (Feb. 15, 2012).

In March of 2012, Defendants announced an Advance Notice of Proposed Rulemaking ("ANPRM"), seeking comment on various ways to structure a proposed accommodation for objecting religious organizations and plan sponsors. 77 Fed. Reg. 16501-01 (March 21, 2012). The ANPRM announced the intention of Defendants to propose amendments to the regulations to accommodate religious organizations that object to the coverage of contraceptive services for religious reasons but are not included in the religious employers exemption. *Id.*

Plaintiffs allege that the Rules are already causing serious, ongoing hardship to Plaintiffs. For example, Plaintiffs claim that, even under the Safe Harbor provision, the Mary Entities, at this time, are being required to provide contraceptive coverage in violation of their consciences. Plaintiffs also contend that the uncertainty surrounding implementation of the Rules has made it impossible for Plaintiffs to develop their future health plans, places ever-increasing financial burdens on them, and forces them to consider potential fines as part of their budget planning.

Plaintiffs assert that Defendants have placed a substantial burden on Plaintiffs' exercise of religion, in violation of the Religious Freedom Restoration Act ("RFRA"), in violation of the First Amendment, and in violation of the Administrative Procedures Act ("APA").

Defendants have filed a Motion to Dismiss this action, arguing that this Court lacks jurisdiction to hear Plaintiffs' claims. Defendants assert that, in light of the Safe Harbor and the ongoing rulemaking pursuant to the ANPRM, Plaintiffs have no standing to challenge the Rules and the case is not ripe for adjudication. Defendants have represented that there are approximately 45 legal challenges to this preventive services regulation nationwide. Docket No. 45, p. 10.

## MOTIONS TO DISMISS

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should

assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 1950. A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

STANDING

To establish constitutional standing, Plaintiffs must satisfy three elements: (1) they must have suffered an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury must be fairly traceable to the challenged action of the Defendants; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Wheaton College v. Sebelius*, __ F.Supp.2d __, 2012 WL 3637162 at * 4 (D. D.C. Aug. 24, 2012).

Defendants argue that Plaintiffs have not alleged a concrete, particularized, actual or imminent injury resulting from operation of the preventive services regulations. Defendants assert that, under the Safe Harbor provision, Defendants will not take any steps to enforce action against the Plaintiffs based upon the current law.

Plaintiffs' counsel represented at the hearing that Plaintiffs want an Order "that says the law as it exists now can never be enforced, never be enforced. So if they come up with some different law at the end of that process, that's fine as long as we have the comfort that the existing law will never be enforced." Transcript (Docket No. 45), p. 35. Defendants' counsel stated: "The rules are not being enforced against plaintiffs now and . . . they will not be in their current form." *Id*., p. 48. As the Court noted at the hearing, it seems the parties are in agreement: "It seems to me very

inefficient for this very issue to be litigated in 45 different districts at once when nobody today says they are going to enforce the rule, and nobody today wants the rule enforced." *Id.* at 43.

Nonetheless, the Court expressly finds, based on the facts presented to the Court, that all Plaintiffs fall within the one-year Safe Harbor, as admitted by the Defendants at the hearing, and that the preventive services regulations, in their current form, will not be enforced against Plaintiffs. Therefore, the Court finds that Plaintiffs do not have standing because they have not suffered an injury in fact that is fairly traceable to the Defendants since Plaintiffs are within the Safe Harbor.

Any future harm to be caused by the Defendants' final accommodation to Plaintiffs' concerns is merely conjectural and speculative. Allegations of possible future injury do not satisfy the requirements of Article III. *Wheaton College* at * 4. A threatened injury must be certainly impending to constitute injury in fact. *Id.* As noted by the court in *Wheaton College*, the government's commitment not to act against employers who qualify for the Safe Harbor was the product of agency and public deliberation and represents a final decision, not an informal promise. *Id.* at * 6.

Moreover, there is no indication that the Defendants will abruptly stop the amendment and accommodation process and enforce the Rules against Plaintiffs. As in *Legatus v. Sebelius*, __ F.Supp.2d __, 2012 WL 5359630 (E.D. Mich. Oct. 31, 2012), the Government's actions are entitled to a good faith presumption. *Id.* at * 5.

When Defendants issued the Rule, they announced their intention to develop alternative means of providing contraceptive services free of charge to employees of non-exempt, non-grandfathered organizations with religious objections to contraceptive coverage. *See Belmont Abbey College v. Sebelius*, __ F.Supp.2d __, 2012 WL 2914417 at * 3 (D.D.C. July 18, 2012) (citing 77

Fed. Reg. 8728 (Feb. 15, 2012)). Defendants have published their plan to amend the Rules to address the exact concerns Plaintiffs raise in this action and have stated clearly and repeatedly in the Federal Register that they intend to finalize the changes before the Safe Harbor ends. *Id*. at * 9. Because an amendment to the final rule that may vitiate the threatened injury is not only promised but underway, the injuries alleged by the Plaintiffs are not "certainly impending." *Id*. at *10.

Plaintiffs' counsel argued that the "Mary Entities" are different from plaintiffs in other recent litigation concerning these Rules because they are currently being harmed. The insurer for the Mary Entities, Blue Cross Blue Shield, is requiring provision of the objectionable services despite the Safe Harbor. The Court recognizes the asserted present harm to these Plaintiffs, but that harm is caused by the insurer not honoring the Safe Harbor. It is not "fairly traceable to the challenged action of the Defendants," and therefore, the Mary Entities do not have standing. As the Court has expressly found, the Mary Entities qualify for the Safe Harbor, and Blue Cross Blue Shield should conform the insurance policies of the Mary Entities accordingly. *See also* Declaration of Gary Cohen (Docket No. 29-1).

With regard to Plaintiffs' RFRA and APA claims, the Court also finds that Plaintiffs have no standing to raise those issues for the reasons stated above.

In summary, Plaintiffs lack standing at this time to bring this action, and the Court must dismiss the case for lack of subject matter jurisdiction.

RIPENESS

Alternatively, even if the Plaintiffs had standing, the Court finds that their claims are not ripe. Ripeness is a justiciability doctrine designed to prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies and

also to protect agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. *Wheaton* College at * 7; *Nebraska v. United States Dept. of Health and Human Servs.*, __ F.Supp.2d __, 2012 WL 2913402 at * 20 (D. Neb. July 17, 2012). To assess ripeness, the Court must evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. *Id*. Considerations of hardship that might result from delaying review will rarely overcome the finality and fitness problems inherent in attempts to review tentative positions. *Id*. at 21.

The fitness requirement of the ripeness inquiry protects the agency's interest in crystalizing its policy before that policy is subjected to judicial review and the court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting. *Wheaton College* at * 7. Because the preventive services regulations are in the process of being amended, they are by definition a tentative agency position in which the agency expressly reserves the possibility that its opinion might change and, therefore, are not fit for judicial decision at this time. *Id.* at * 8.

The Court finds that adjudicating Plaintiffs' claims now would undermine the interests of judicial economy as it would require the Court to review the Rule before it is amended and before it is to be enforced. Moreover, it would deny the Defendants a full opportunity to consider Plaintiffs' objections and to modify the Government's positions.

In addition, the Court finds that Plaintiffs have not demonstrated a hardship from any delay that would override the lack of fitness for judicial review. The Rule's impact upon Plaintiffs at this stage is not sufficiently direct, immediate, and traceable to the Defendants to warrant judicial intervention. The Plaintiffs' desire to plan for future contingencies that may never arise does not constitute the sort of hardship that can establish the ripeness of their claims. *See Nebraska* at * 23.

As in *Wheaton College*, the planning insecurity Plaintiffs advance with regard to what the preventive services regulations may or may not require of them does not suffice to show hardship. *Wheaton College* at * 8. Costs stemming from Plaintiffs' desire to prepare for contingencies are not sufficient, particularly when Defendants' promises and actions suggest that the situation which Plaintiffs fear may not occur. *Id.*

Accordingly, the Court finds that, even if Plaintiffs had standing to advance these claims, the claims (constitutional, RFRA and APA) are not ripe for judicial review.

CONCLUSION

For these reasons, Defendants' Motion to Dismiss (Docket No.28) is GRANTED, and this action is DISMISSED.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE